I want to focus today on the argument that with the District Court's exclusion of evidence post-trial, there was no evidence left of retaliatory animus in the case. I also want to point out some parts of the record that are not highlighted in our briefs. As the procedural history of this case shows, when this Court reversed the award of summary judgment, it did so relying on one piece of evidence. That evidence never came in at trial. Robert over FSS's objection, the Court allowed Mr. Travers to testify about what Mr. Nichols supposedly told him about the CEO's intent to supposedly get rid of him. Upon review of that testimony post-trial, the District Court properly recognized that it was error to admit it. That ruling was accepted when Mr. Travers accepted the remitter. May I urge you not to spend a lot of time on a law-of-the-case notion. Let's assume that there had been no summary judgment one way or the other, and can you tell us why on the evidence presented at this trial, if the evidence that the judge excluded remains excluded, why it is you think there was insufficient evidence to sustain the jury award? Thank you, Your Honor, yes. The but-for standard is a high heightened standard. It says that the termination would not have occurred unless FSS was retaliating. And it's critical to point out that Lisa Varazis was the manager who conducted the investigation into Mr. Travers's situation, who gathered the facts. She did not testify at trial. In fact, the parties stipulated that no inference could be drawn in favor or against either by her not testifying at trial. So this is the antithesis of a cat's paw case. The person who conducted the investigation and recommended termination was essentially, as stipulated, completely neutral. And it's Ms. Varazis's recommendation of termination. And that approval was easy in Mr. Travers's case because he corroborated the passenger's complaint. If there was an effort to prove that Ms. Collier herself was retaliating, here was the evidence that might have needed to exist that wasn't there. That Ms. Varazis did not recommend termination, and for some suspicious reason, Ms. Collier terminated him. That Ms. Varazis regularly recommended terminations, and Ms. Collier regularly disagreed with those recommendations, but curiously didn't do so here. Neither of those were the evidence in this case. What about the evidence, what we'll call differential treatment evidence, the treatment of others who were terminated and others who were not terminated? Why is that insufficient for the jury? For several reasons, Your Honor. There was no differential evidence, number one. Anyone who was accused of tip solicitation by a passenger or by someone who was there, in other words, was it verified, as Ms. Collier said in the joint appendix at page 942, was terminated for tip solicitation. The others, Kwok, Tony, Stone, Faiz, none of those people, there was no evidence that they actually solicited a tip and were actually not terminated instead. There were vague references to other inferences, but none of it was the hard kind of evidence that a court requires when it views someone as a similarly situated employee. And that leaves Mr. Jing Wei. The situation with Mr. Jing Wei was very different, and I want to review the evidence against Mr. Travers here. The passenger wrote a statement, record at 1239, that said, Mr. Travers told her, a tip is required. A tip is required. That's not sufficiently highlighted in our briefs, that passenger's complaint. He told her, it's his livelihood. When she only tipped him a dollar, he got angry and said, I'm sorry you didn't like the service. And she felt like he was hustling people. Those were her words. And then Jocelyn Bew, the manager from JetBlue who interviewed the passenger, wrote down, and that's in her notes, record at Joint Appendix 1240, she wrote down that the passenger told her that she felt like she was being bullied by Mr. Travers. This was a very serious passenger complaint. Yes, Your Honor. I just want to go back one step, which is, assume, as you say, the investigator does a neutral investigation because there's no evidence that she's anything other than a neutral investigator, right, on your account. And then Collier responds to that by accepting the recommendation. Just so I grasp your argument, if the Travers testimony had been included, right, if it was properly included, you seem to be acting on the assumption that, well, then there might be evidence of retaliation. But you'd still have a neutral investigator and you'd still have Collier. So why would that make a difference? It wouldn't make a difference, Your Honor. It would not. It would not. Although I don't want to hearken back to this Court's decision. There is something this Court said on the summary judgment ruling. It said we need to determine if that intent to retaliate filtered down to viracious, essentially. So but, OK, now, that's what I guess makes me worried. You just posit she's a neutral investigator. But, of course, if Travers testified, there'd be a question, did it filter down? Presumably that could be a jury question, which is, is it worried it did filter down? But that same possibility is just as true if Travers doesn't testify, isn't it? Travers? Nichols? I mean, if Travers doesn't testify about Nichols. In other words, if we exclude the testimony, there's still the same issue as to whether the concern about Travers being the lead plaintiff permeated all the actions taken with respect to Travers. Except there's no evidence that it did. Well, so, but the evidence, I guess, would be Collier's position overseeing the litigation, the inconsistent, if one agrees there's an inconsistency, in treatment of other individuals who were accused of tip solicitation. I recognize you disagree with that there was any inconsistent evidence. But if there was inconsistent evidence, wouldn't it be permissible for a jury to conclude that the reason they went after Travers was because he was the lead plaintiff? No, there would be no evidence to draw that conclusion. Why not, even if there was inconsistent treatment? Well, because, number one, I do disagree that there was inconsistent treatment. So simply that Ms. Collier arguably knew that he was some sort of leader on the curve, which actually isn't the testimony. The testimony is that Ms. Collier viewed him as one of ten. The only testimony that he was the leader on the curve came from his fellow skycaps and a duty supervisor who sits on the curve with him. But a jury couldn't believe that Collier would know that? That would be a stretch. And that would be one stretch upon another stretch upon another stretch that no jury could. I guess, since we're reviewing a jury verdict, we take a lot of inferences in favor of that verdict, right? Except that once we start stretching and stretching and stretching, we get to the point of there being no reasonable jury that could draw this conclusion. For example, a vice president of human resources who has responsibility for getting updates on what's happening with a case, that's not sufficient to claim that she had retaliatory animus and meet the but-for standard. But wasn't there testimony from co-workers to Travers warning him that the jury did hear that people upstairs weren't happy about what he was doing? No, Your Honor. In fact, Mr. Travers tried to have Mr. Agba testify to that. That was objected to, is objected to, and then Mr. Agba eventually said something that the court then struck. So that didn't come in either. So there was no such testimony. There were a lot of lawyer questions in the record, lawyer questions which aren't evidence, which we feel tainted the jury and prejudiced them. So on top of the fact that the evidence came in that shouldn't have come in, we have the jury hearing that evidence and then hearing how significant it is, as this court even found on this earlier procedure. So your position in the record shows at most evidence of inconsistent treatment, but there's no evidence at all by any testifying witness regarding any concern about the lawsuit? None, Your Honor. None. And Ms. Collier never says, I'm responsible for minimizing the cost of the lawsuit. I didn't mean by Ms. Collier. I mean by anybody. Nobody, Your Honor. And in fact, there is no evidence of differential treatment at all. If you think about it, any time a person was directly accused by a passenger or someone there of tip solicitation, they were terminated. There was no evidence that they weren't. Well, that may be a premise that's questionable, but the connection between any small variations in treatment and retaliation, you say there is no evidence whatsoever. And the jury isn't free to speculate why was he treated differently? Your Honor, there was no differential treatment. What I'm trying to find out is whether that's a necessary part of your argument or not. You seem to be saying it is a necessary part of your argument. We don't think it is because we don't think there was evidence of that. I know that I need to rebut what I know is coming from Mr. Travers' counsel, and I know that this evidence was talked about before, and I know that it came in at trial. May I move you on to a different topic? And that is the question of front pay in the case and whether the plaintiffs have preserved their ability to attack the district court's elimination of front pay. They have not, Your Honor. Okay. Now, one might agree with you if one looked at the earlier judge's language about remititor and what he was including in remititor, but the final order is a little bit different in its characterization than the earlier language that the judge used. Do you concede that much? Your Honor, I think that that's just a wording error, or if it's an error by the judge. I think that the judge clearly found that this jury was influenced by bias, by prejudice, by inflammatory remarks, and that there was a miscarriage of justice with respect to the ward in total. The jury was inflamed. It acted with passion against FSS, who supposedly was looking to get rid of Mr. Travers, and the jury was invited to speculate in general. The trial court had broad discretion to do what it did, and the review of that discretion should be narrow. Mr. Travers accepted that. There's no Seventh Amendment issue here. There's no... When you say there's an acceptance, here's the plaintiff's acceptance of remittor. Plaintiff hereby accepts the court's remittor of the emotional distress damages. However, plaintiff reserves the right to appeal the striking of all the front pay damages citing to a Sixth Circuit case allowing you to appeal and not treating as remittor something that's JNOV. So how is that an acceptance of remittor as to the front pay? Your Honor, that is not possible. The Donahue case, the Donahue U.S. Supreme Court case, which we think the Sixth Circuit was wrongly decided, says that that is not possible. Once you accept a remittor, you accept the remittor. So your position is even though she did not purport to accept the remittor, she, as a matter of law, had no choice but to accept the remittor? You can't have it both ways. We also take the position... Then the district court's final order, which refers to JNOV, was an error? It says the court stands by its decision to eliminate the front pay award and to order a remittor as if they're different. Well, we think that that would be reading too much into what the court was doing. Even after she has, he says, I'm not going to decide this until I get your acceptance. She files an acceptance in which she says, I accept remittor as to emotional distress. I do not accept it as to front pay because I treat that as a JNOV. We then get the order on remittor from the judge in which he says, I stand by my decision to eliminate front pay award, not characterizing as remittor, and then says, and to order a remittor as to emotional distress. How is that an order of remittor as to front pay that she's accepted? If you read all of that together with the court's comments and oral argument at our post-trial motion where the court did decide to grant the new trial a remittor, you will see that it is all encompassed in an effort to reduce the award to a point that it doesn't shock the conscience. That's consistent with it being a JNOV. If you give a JNOV, there's no shocking of any conscience, gone all the way to zero. Except for the fact that when a court is supposed to fashion a front pay award, it's supposed to factor in that there are already liquidated damages being awarded, and it can do that and has the discretion to do that. But we feel that if there's no judgment that should enter for us in this appeal, which we believe there should be, we should have a new trial outright because of the highly prejudicial entrance of this evidence which shouldn't have been admitted, and that new trial outright would be the only fair result given that whatever award was issued, it issued with that evidence in mind. So that's our backup argument if JNOV is not granted to us. And on that argument, you raised that in the reply brief for the first time? No, we raised that in both briefs, Your Honor. It's on page 14, I believe, of our opening brief, and it's on, I'd have to get the page number. Page 14 of the opening brief? Okay, so you're not looking for an affirmance if she makes her case on front pay on anything else? You would just like a whole new trial on everything? We think that that's the just result given this highly prejudicial piece of evidence which originally caused us to go to trial in the first place. Okay, thank you. Let's ask Judge Toray if he has some questions now. I have a couple questions, yes. I take it you had the name and address of the complaining passenger? The question is whether the defense in this case had the name and address of the person on the jet blue flight who made the complaint about Mr. Travers. In other words, could you have contacted and put on that witness? I think we spoke with the district court about this, and there were efforts made to contact that witness, and ultimately, she could not be found. All right, thank you. Is it a fact that after the initial, after taking a statement, you made no further effort to contact that passenger? Is that in the record? Your Honor, I guess that could be an inference, but we did have the jet blue... No, I'm not talking about inference. I want to know whether the record shows that you did not attempt to contact that passenger after the initial contact. No, the record does not show that, Your Honor. The record shows that Ms. Collier, I believe, testified that we tried to locate the passenger, but she said something to the effect of, we're not the FBI. Uh-huh. Did you have the address of that? Well, you took that statement. Did you take down the address or name of that witness? I believe jet blue would have in a passenger record that information, but they never provided to FSS overall, so there was no evidence that we had that address at the trial. Uh-huh. Any further questions? Yes. At trial, Nabil Agba, a former supervisor of yours, testified that it was clear to management of flight services that Travers was the leader of the jet blue case against flight services. Right. Mr. Agba did testify to that. However, Mr. Agba was a duty supervisor on the curb at Logan Airport. Mr. Agba, Ms. Collier herself was questioned about his leader role and didn't have any testimony that he was a leader, and Mr. Agba's testimony doesn't talk about which managers it was clear to. It could have been clear, for example, to another manager who he doesn't even name. This was one of the many vague and speculative comments that it would be very much a stretch, very much a stretch to string all of these together to find what core standard being met. I believe he also testified that right after terminating Travers, several of the flight service managers discussed how they would win the jet blue case by convincing other plaintiffs individually to drop the suit. And that was stricken? And in fact, it started to happen. They started to drop suits. Your Honor, that testimony was stricken by the district court as well. He notes, Judge Stearns notes that on page, I believe it was 1415 of the record appendix, but I would have to check that. All right. Thank you. Can I ask you about one other piece of evidence and whether it's before us or not, which is Travers, I think, testified regarding a conversation he had with Viratsis? Yes, Your Honor. Where he says he was asking when he would get back to work and Viratsis apparently told him, you know why this is happening. Travers asked if it was happening because of a lawsuit and Viratsis says, I can't talk about it. Is that before us, that evidence? Or was that stricken? That I don't actually recall being the exact sequence of that evidence. I recall that what Travers testified is that he told Viratsis, the passenger felt like I was demanding a tip. The passenger felt like I was demanding a tip. In other words, he understood that the passenger accused him of tip solicitation. Okay, but just what the passage I'm talking about, which is Viratsis saying, you know why this is happening, and then she says, is this happening because of the lawsuit Travers says, and she says, I can't talk about it. Is that before us? Whatever Mr. Travers testified to that wasn't stricken is before you. I'm sorry? Whatever Mr. Travers testified to that wasn't stricken is before you. All right. Actually, within seven days, I'd like both of you to provide us with any record references to put this into context. No argument. Just the record references. Seven days. Your Honor, may I ask, is that the one I referred to regarding or all of Mr. Judge? Record references to the lawsuit. Would you like to read again? Travers asked Viratsis when he could get back to work. Apparently, Viratsis says, the quote is, you know why this is happening. And then there's a further thing where Viratsis replies, I can't talk about it. It's appendix, second appendix at page 627. Whether there's any other evidence in the record shedding light on this? Passage.  Thank you, Your Honor. Can I have another question? Certainly. Am I on? Yes, you are. Counsel, isn't there a sign that says that tipping is optional but greatly appreciated and doesn't slide further to allow SKYCAPS to tell the customer directly, quote, tips are not required but are appreciated, end quote? That's not the exact quote, Your Honor, but there is a sign at the curb where SKYCAPS are allowed to say tipping, there's a $2 fee at the curb, gratuities are optional but greatly appreciated. However, that's not what the passenger accused Mr. Travers of saying. I just want to see if we agree on the facts. Why is that another way of soliciting tips? Your Honor, that is different from saying tipping is required. That's different from what the passenger accused Mr. Travers of saying here. As an aside, but it's not in the record, that sign came about by virtue of the SKYCAPS asking if they could just say something, you know, that would indicate that the $2 fee wasn't a tip, but that's not in the record, but that's how that came about. Could that be soliciting a tip? Are they allowed to say tipping is not required but appreciated? That would be close to what's said on the sign, but we're not talking about those facts. Isn't that a statement allowed by the company? That specific statement is not allowed by the company. However, that is close to a statement that the company has decided would be allowed. But anything outside of that is dangerous, and SKYCAPS all know as they testified, you don't compare tipping to a restaurant, you don't demand a tip, you don't do what Mr. Travers admitted to saying, let alone what the passenger accused Mr. Travers of saying. You don't do what Travers admitted to saying because it could be tip solicitation. Counsel, I have one last thing. You mentioned on page 14 of your opening brief, you asked for a new trial if the Travers testimony, because the Travers testimony was wrongfully included, assuming that the remitter isn't the problem. I just don't see that here. If you could just, along with your filing, just identify where in the opening brief you make the argument that you do make in the reply brief that you're entitled to a new trial. Do it in your letter, please. Thank you, Judge. Judge Turea, any further questions? No, thank you very much. Okay, thank you, Counsel. Good morning, Your Honors. May it please the Court. Shannon Liss-Riordan for the Plaintiff. Because we're using telephone lines, be sure you speak loudly into the microphone. Yes, I will do so. Judge Turea, please let me know if you can't hear me. Your Honor, the arguments made in FSS's briefing is largely an attempt to re-argue the case, which it argued to the jury, and the jury had the right to not believe FSS's brief. Now, as has been brought out in Appellant's argument, a large portion of their argument rests on the contention that the testimony that Travers brought in as to what Mr. Nichols said to him was improperly admitted. I believe this should be a simple issue because it's right here in the record that Judge Stearns apparently later thought he improperly admitted it because Mr. Nichols was no longer employed by FSS at the time that he made the comment. But right here in the testimony, it's page 1J, Joint Appendix 640, Mr. Travers stated that he got the dates confused. At one point, he said that the comments were made in the summer of 2010, although Mr. Nichols had been terminated in the spring of 2010. But just a little bit later in the trial, he said, I apologize, it was probably the spring of 2010. It was right before he was terminated. Counsel, we're not going to resolve issues of fact like that. If you had convinced the trial judge that his basis for exclusion was wrong, that would be another matter. Okay, thank you, Your Honor. I do submit it was an abuse of discretion because there is evidence from which the jury could conclude that he was employed there. And in fact, Mr. Travers said he made the comments while they were at the curb at work. So, moving on, there was other evidence as well that was amply sufficient to support the verdict in this case. As we've talked about, or as you talked about with Appellant's Counsel, there was comparator evidence, which was similar to what was looked at when this court previously considered this case on summary judgment. Although FSS wants to discount it, there was evidence that was admitted into the record of skycaps who were accused of soliciting tips who were not terminated. They say, well, there wasn't real evidence. Well, it's for the jury to determine what weight the evidence should have. It was admitted, it was not excluded. There was evidence that skycaps who were terminated for soliciting tips had engaged in far more egregious behavior than Mr. Travers had participated in. And again, this colloquy that we just had with Judge Torea makes clear how on the line this is. The company allowed the skycaps to say, gratuity not included, but greatly appreciated. And Mr. Travers admitted to saying that. And his cohort said that they were allowed to say that. When there was a customer who asked further questions about what does that mean, he might have gone a little further to say, well, just like in a restaurant, you can tip if you want, you don't have to. He did not admit to telling her that she had to tip. That's just a perversion of the evidence. Counsel, putting aside the differential treatment point and assuming the Travers testimony about Nichols is excluded, and I know you can test both points, but taking as given those things, what evidence is there in the record from anybody who testified, and it can be Travers, it can be one of you who testified, that would suggest management knew about the lawsuit and was concerned about the lawsuit, that the jury would have heard? Well, first of all, Sarah Collier, who said that she made the final decision, she testified that she was the company representative who was responsible for defending the lawsuit, defeating the lawsuit, keeping the costs down, and she admitted that it was a discretionary decision that she made as to whether or not tip solicitation had occurred. Right there, that's the retaliatory animus, if you have to have the direct retaliatory animus. That itself should be enough. In addition, there is the evidence of Nabil Agba. Some of it was stricken, not all of it was stricken. I would urge you to go back and look and see what he testified to that was not stricken. But he talked about how the Whitesells didn't like lawsuits. Management generally knew that the Whitesells didn't like lawsuits. Sarah Collier testified that she had, I believe it was weekly, if not daily, conversations with Bobby Whitesell. We had direct evidence here of management hostility to this lawsuit, although I sort of question in a retaliation case, can't the jury infer that a company is not happy about being sued in a class action lawsuit? But not even going there. We had the evidence that that animosity did exist. We had, as you pointed out, and we'll submit the references for you afterwards as well, the Travers colloquy with Collier, I'm sorry, with Viratsis as well. And also, about Mr. Travers being known as the leader, there was evidence that he was known as the leader of the lawsuit. You can also just look at the caption of the underlying case, Travers versus JetBlue and FSS. There's evidence that he was known as the leader. He was the lead plaintiff on the case. As well as his... And the jury would have known that? Yes, it was in evidence. A copy of the lawsuit complaint was in evidence and the name of the case was recited many times in the trial, Travers versus JetBlue and FSS. A number of points that I want to make, but I want to focus on any particular questions you have. But I want to jump for a moment to the front pay issue. And I believe in your previous questions, you already brought out the main points I was going to make was that we did say that we were accepting the remitter on emotional distress, but not on front pay. And then we had a later briefing with Judge Stearns and I believe there was a hearing as well where I made that clear. And he never said, oh no, I said remitter and if you're accepting it, you're accepting it. In fact, in the final order, as you pointed out, he made even more clear or he made clear there that these were two separate decisions he had made. One, to strike front pay and two, to remit emotional distress. With respect to the striking of the front pay altogether, Judge Stearns simply said there was no evidence supporting a front pay award. And I found that quite striking because there was evidence and he wouldn't he didn't cite what his reasons were for saying there was no evidence. There was evidence in the record, Travers himself testified that if he hadn't been terminated, he planned to work there another 20, 30 years. There was evidence that skycaps in fact did stay in these jobs for decades because they were good jobs. There was evidence that he lost as a result of taking a skycap job for a less busy airline at Logan. He became a skycap at Southwest. He lost on the order of $25,000 per year and Judge Stearns upheld the back pay award, which was based on that estimate of a $25,000 per year loss in wages. And Judge Stearns erroneously said, well, I don't know where the jury got 30 years of front pay. I find no evidence of front pay. But they didn't base it on 30. As we tried to explain to him, the math works out that apparently they did accept 20 years times $25,000 and then because the judge instructed them to deduct for present value, it appears that they were thinking $500,000 and then subtracted $50,000 for deducting for... If we were to find that there was some basis for some award of front pay, what do you want us to do then? Well, two alternatives. One is to reverse the district court in his striking of the re-enter the jury's verdict, which the jury found after a week-long trial. Alternatively, if the judge thought that the front pay was excessive, it could be remanded for purposes of considering if a remitter was appropriate on front pay, what an appropriate remitter would be. That's an alternative. And then also, as we've noted in our brief, should the front pay be reinstated or reinstated with a remitter, it should have been troubled under chapter 149 section 150, which provides for mandatory troubling. Before you get to the troubling, can I just understand what would happen if we did the front pay and we sent it back for him to then say remitter or new trial? I take it at that point you could elect new trial? Right? On the front pay. Just on front pay? See, what happens to the emotional distress damages that you've already accepted the remitter to in that circumstance? I just don't quite get how this procedure is going to work when the judge assuming the judge split it as he did let's say the judge did split it but I don't quite get what can happen then on remand? I believe, if I'm not mistaken, I believe it was Clifton versus MBTA was a case in which the case was remanded to the trial court for a new trial on a certain aspect of the damages only, so I would cite that, but I just wanted to point out that that would be your preferred remedy, that they would just do the trial just as to the front pay issue? If there were a remitter I mean, it could be reinstated it could be a remitted deter and if it were not accepted then I would submit that the trial should only be on the front pay But that's odd because the judge, if he knew that he couldn't do a J&OV probably would have given you a single remitter order to which you would have to accept the whole of it or be subject to a new trial, which would be a different choice for you so you're kind of getting a different kind of choice now the second time around, but I don't know who's responsible for creating that new choice whether that's on the district judge or you or on the defendant for not objecting to what went on but it's an odd situation I would suggest that the plaintiff should not be if the district court erred as we suggest, the plaintiff should not be prejudiced by this turn of events So the jury would be instructed there is liability back pay of this sum was awarded and the only issue before you is the amount of front pay and then of course the legal issues about traveling is that what you anticipated? I believe that would be appropriate, should we not accept whatever the remitted amount is, should the court remand for consideration by the district court of a remitter See it's not clear to me, even if we treat the front pay as a separate issue from the back pay for remitter purposes that the judge didn't also mean the other reasons he gave for remitter of back pay as to the front pay award, that is his evidentiary mistake in admitting the testimony and then something about the zealousness of your advocacy Well if I could just speak to that for a moment I believe the district court conflated several issues there I don't want to hear a defense of your advocacy so don't go in that direction but the notion that part of the reason he vacated the front pay award was that he was afraid these influences had added to the award To that I mean it would make clearly he was issuing a remitter on front pay up until the time you declined to accept I mean he characterized it as such which meant it was all these discretionary factors you don't accept it which was your right not to accept at least potentially your right not to accept he then seems to convert it into a JNOV but he gives no reasons why it would be a JNOV the only reasons we've got on the record would be reasons that would go as to why you would do it as a remitter and not all of them are relevant to the JNOV well right the reasons that he gave I was just simply saying were not relevant to why he determined that the damages were too high but there was the 6th circuit hill case that we cited where the court called it a remitter but the court said no it's not a remitter if you're saying it goes well together we don't have to agree with him now do we it's a sister court it's not the circuit and your case is easier for us if we were to rule for you than that because he didn't on your account characterize the front pay issue as a remitter correct have you been through our settlement program here seriously at the court of appeals not allowed to talk about settlement discussions you are required to answer the question about whether you went to the program that's all I'm asking um we did not go to the program alright thank you um so I just wanted to note if the front pay is reinstated in the Kelly case from this circuit front pay was troubled multiple damages were applied to front pay under a 151B award the Haddad case emotional distress damages were troubled in a 93 case I rest on our briefs I just wanted to make a quick note can I ask you about the prejudgment interest how do you think that should be handled it seems to me from the record the district court said it was going to issue the prejudgment interest at one point in the hearing there's some statement but then nothing happens one way or the other with it my recollection was that the judge followed the federal FLSA cases and said that you don't get interest as well as I think it was because of the emotional distress and we pointed out that that was under the FLSA where it was discretionary whereas under state law both troubling as well as prejudgment interests are mandatory under the respective statutes and how does remittitor factor into that is there any case law that tells us if you've accepted remittitor on certain damages whether that acceptance of the remittitor precludes the prejudgment interest applying to it or whether that isn't covered by the remittitor bar I would have to look at the record to be certain about this but my memory was that he made those decisions after waiting to see whether we accepted the remittitor the question about troubling he put the troubling of the back pay in the very final judgment after after the remittitor for the emotional distress was accepted although he had said earlier that he would trouble back pay but not his statement about the prejudgment interest I don't remember exactly at what point he said that but my understanding was that he saw that as a legal issue that was separate from his remittitor of what the actual amount of damages should be for emotional distress Judge Torea yes when I collected the record shows that Collier admitted that there had been no investigation regarding the complaint by the passenger is that testimony in there her testimony was that there was an investigation but the record showed that the investigation was that for three weeks they interviewed the two skycaps who were working with Travers that day both of whom said nothing unusual happened and she spoke with legal counsel and Bobby Weitzel over the course of three weeks and that was the extent of the investigation and was there any attempt to reach the complaining passenger did she testify to that I remember the testimony of her saying we're not the FBI I don't remember if she specifically testified one way or another as to any efforts FSS took to try to reach the passenger they kept talking about how well we already had the statement from the JetBlue supervisor and we did point out later that there was no record of what passenger complained about what skycap that's another source of evidence showing that the lack of investigation may have well been material because Travers testified about what the passenger looked like that he was talking about which was different from what Jocelyn Boo, the JetBlue supervisor testified she recalled this passenger looking like Was Sarah Collier instrumental in the decision to discharge Mr. Travers I'm sorry, I didn't hear that was who? Was Sarah Collier instrumental in the firing of Mr. Travers Yes, she testified that was her decision she made the final decision she considered Lisa Veratsis' recommendation and she was the one to make the decision that was her testimony um Is there any evidence left to her regarding Mr. Travers Well, yes as I stated in our brief Ms. Collier testified that she was the company representative defending the lawsuit it was her job to defend the lawsuit to defeat the lawsuit, to keep the costs down and she also testified that she spoke frequently with Bobby Weitzel, one of the owners of the company I don't remember if it was senior or junior or both that they spoke frequently about the lawsuit They talked about the cost of the lawsuit They talked about the cost and they talked about I don't remember if it was explicit or can be presumed they talked about defending the lawsuit and how to defeat the lawsuit Thank you Thank you counsel I'm going to give Mr. Rosen another minute in case he was caught by surprise by anything Thank you Page in our opening brief was page 21 Thank you Ms. Collier page 870 of the joint appendix talked about how she talked about the lawsuit with Bobby Weitzel the president but she didn't talk about it like she talked about that it was some sort of thorn in the side it was simply one of the things that they talked about she didn't talk about how this lawsuit was something that was anything out of the ordinary for her or created any issues so there's no evidence that Collier herself had retaliatory animus and because she's removed from the decision removed from the investigation by having just absorbed everything that Lisa Baratsas did which was talk to Travers try to talk to Jocelyn Bowie, read the passenger's statement find out what else was going on at the curb and incidentally Baratsas did corroborate that Joe Travers went on break immediately after talking to this passenger which corroborated what the passenger said about him being frustrated and slamming the door Baratsas concluded that it was tip solicitation Collier simply agreed there was no judgment that could be retaliatory here there was simply typical business judgment I don't think it's on page 21 either what I'm looking for in the reply brief you say that you're entitled to a new trial because of the erroneous admission of the Travers testimony you don't have to give it to me now but I don't see it on page 21 it was in 21 of the opening brief yeah I know but it's not there what you say in the reply brief is that you're entitled to a new trial because of the erroneous admission of the Travers testimony what I'm asking is did you make an argument that you're entitled to a new trial because of that erroneous admission in the opening brief so if it is on 21 you can say it in the letter I don't see it there if it's on another page that would be great too your honor thank you both we appreciate the argument